John DASSINGER, Jr., Plaintiff, Respondent-Appellant,

v.

Arnold KUHN, Marcus Wax and Frank Baar, Defendants, Appellants, Respondents.

No. 7659.

Supreme Court of North Dakota.

Feb. 3, 1958.

Greenwood & Swanson, Dickinson, R. J. Bloedau, Mott, for defendants and appellants-respondents.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for plaintiff and respondent-appellant.

SATHRE, Judge.

The plaintiff brought this action against the defendants to recover damages for injuries alleged to have resulted from an accident caused by the negligence of the defendants on September 16, 1954.

The defendants Arnold Kuhn, Marcus Wax and Frank Baar, who are farmers and ranchers residing in the same community had an arrangement for doing exchange work cutting their corn for silage and hauling it to their respective farms where it was stored for later use. The defendants pooled their labor and machinery so that they could more efficiently complete the cutting and storing of the silage. Kuhn furnished the silage cutter and a truck; Baar furnished a truck and his labor, and Wax furnished a tractor for packing the silage. The plaintiff Dassinger was in the employ of Wax. Kuhn operated the silage cutter, the plaintiff and Baar alternately followed the silage cutter with a truck into which the silage was elevated and when the truck was loaded it was driven to the silage stack where it was unloaded by the operation of an automatic hoist, with which the trucks were equipped.

The complaint alleges that the arrangement of the defendants was a joint venture and that while the plaintiff was employed by the defendants hauling corn the defendants negligently and carelessly overloaded one of their trucks and in unloading it bent the frame; that the defendants Wax and Baar proceeded to repair and straighten the frame of said truck by means of a chain and a jack; that the chain so used was defective, but that nevertheless the defendants negligently and carelessly proceeded to use said chain and jack; that the plaintiff as a servant and employee of the defendants was requested to assist in the repair of the truck frame, and while plaintiff was assisting in straightening said frame the chain broke striking plaintiff and causing the loss of his left eye, and that plaintiff's injury was proximately caused by the negligence and carelessness of the defendants and that defendants were fully aware of the extremely dangerous manner and method they were using in attempting to repair said truck. The complaint then alleges that plaintiff incurred medical expenses in the sum of $322.17; that he will incur an additional expense of $1,000 for doctor bills for the repair and replacement of his glass eye during the rest of his life; that he will sustain loss of earnings in the sum of $25,000 and that in addition thereto the plaintiff was damaged in the sum of $25,000 for pain and suffering, in all the sum of $51,322.17.

Defendants answered by general denial, except that they admitted that plaintiff was injured, but denied any negligence on their part, and alleged that plaintiff's injuries were caused by his negligent acts in interfering voluntarily in attempting to manipulate the jack and chain used in straightening the frame of said truck; that the interference by the plaintiff was without authority, permission or direction by the defendants, or either of them, and that plaintiff himself was familiar with the use of said jack and chain and voluntarily assumed any and all risks involved in the manipulation of said jack and chain; and that plaintiff's injury was caused by his own contributory negligence.

The case was tried in the district court of Stark County, at Dickinson, North Dakota to the court and a jury. At the close of plaintiff's case and again at the close of the case when both parties had rested, the defendants moved for a directed verdict for dismissal of the action upon the grounds that it had been clearly established by the evidence that there was no negligence on the part of the defendants, and that it is conclusively established by the evidence that the plaintiff was guilty of contributory negligence and that the plaintiff is barred from any recovery against the defendants or either of them by reason of his own contributory negligence. The plaintiff resisted the motions and they were denied by the court, and the issues submitted to the jury. The jury returned a verdict in favor of the plaintiff in the sum of $9,000 and judgment was entered thereon on November 29, 1955.

The defendants made a timely motion for judgment notwithstanding the verdict, or in the alternative for a new trial. The motion was heard and argued on December 16, 1955, but no decision was made thereon until June 18, 1956 at which time the trial court granted defendants' alternative motion for a new trial. Thereafter and on September 1, 1956 the trial court made its order denying the motion of defendants for judgment notwithstanding the verdict.

On May 26, 1956 the defendants appealed from the judgment entered in favor of the plaintiff on November 29, 1955. Thereafter and on September 6, 1956 the defendants appealed from the order of the district court dated September 1, 1956 denying their motion for judgment notwithstanding the verdict.

On July 28, 1956 the plaintiff appealed from the order of the trial court, dated June 18, 1956 granting defendants alternative motion for a new trial.

The defendants having appealed from the order denying their motion for judgment notwithstanding the verdict and from the judgment in favor of the plaintiff, it will be necessary to examine the evidence as to its sufficiency to support the verdict. The defendants allege in their specifications of error that the evidence conclusively shows negligence and lack of due care on the part of the plaintiff; that there is no evidence of negligence by the defendant; that there is no evidence of a joint enterprise; that there is no evidence sufficient to frame any issue for the jury to decide; that plaintiff voluntarily placed himself in an obviously dangerous position when wholly unnecessary and when safer courses and methods were obviously open to him. The questions thus presented for consideration are whether under the evidence plaintiff's injury was caused by negligence on the part of the defendants, or whether it was proximately caused by his own negligence.

There is very little dispute in the evidence. The defendants were doing exchange work cutting and stacking their corn for silage. On September 16, 1954, they were working on the farm of the defendant, Kuhn. Kuhn operated the silage cutter. The plaintiff and the defendant Baar drove trucks hauling the silage from the field to the farm yard where it was unloaded and stacked. The defendant Wax packed the silage in a stack using a tractor for that purpose. The defendant Baar was attempting to unload his truck on the silage stack when the load shifted to one side causing the truck to tilt to the left side and the weight of the load bent the frame of the truck so as to interfere with the operation of the hoist. Baar did not go back to the field, but he and defendant Wax drove the truck to the machine shed of the defendant Kuhn where they procured a hydraulic jack and a log chain. They put the chain over the frame and placed the jack in a position so that by pumping it pressure was applied to the bent frame. Meanwhile the defendant Kuhn had driven into the farm yard. Kuhn went to his granary on the farm. The plaintiff who had come in from the field with Baar went to the machine shed

where Wax and Baar were repairing the truck. They had placed the jack and chain in position and had pumped the jack sufficiently to put tension on the bent frame. At this time the plaintiff, after having observed the manipulation of the jack and chain by Wax and Baar, stepped upon the frame, or straddled it and began pumping the jack. While he was pumping the chain broke and it struck the left side of his face injuring his left eye so that it had to be removed.

It is the contention of the plaintiff that it was the duty of the defendants Wax and Baar to warn him of the dangerous position in which he placed himself when he was pumping the jack; that they were careless and negligent in not examining the chain as to any weak links before they attempted to use it in straightening the frame of the truck. Lew Reiters, a blacksmith and welder, testifying for the plaintiff stated that he had examined the chain involved, plaintiff's exhibit 3, and that he found several links that had been worn and stretched so that they were considerably below full strength. He also found several links that had been welded.

The defendant Wax had had some experience as a mechanic and in straightening truck frames and he directed the use of the jack and chain in the operation of straightening the bent frame.

With reference to the participation of the plaintiff in the process of straightening the frame, Wax testified as follows:

"And the chain came over here from this side, over to this side and around (indicating) didn't interfere with the handle, so Frank Baar, he was standing here (indicating) holding the jack and while he was getting prepared to jack, Johnny Dassinger, he was on the other side of the truck, he did not help with any of this before, he, well, he was just walking around in back, he didn't pay no attention to what was going on or what was done, because we was doing it, he came up on the other side of the truck, jumped on the frame and straddled it, put one foot on this side and one foot on this (indicating) closed member goes over this truck over to the other frame, and he stooped down in position, pretty difficult for me to jump on, but he stood like this (indicating) and was jacking while the jack was naturally pretty close to his face also, oh, I would say this far, (indicating) while he jumped up and grabbed I was standing right here (indicating) I helped hook it up on the frame, just holding on the jack so that I could feel whether it was going to move or not, and by that time I seen Johnny Dassinger pump and I just stepped back to see if the end was coming up, and it was, it was coming nicely and about that time—bang! and that's when the chain broke and I seen the chain fly up and, of course, Johnny just squatted down on the truck and Frank Baar grabbed him off the frame and stood him down and then we examined his eye and we seen that it was hurt pretty bad—"

The testimony of Baar is substantially the same as the testimony of Wax as to what the plaintiff did and how he was injured. It is undisputed that neither Wax nor Baar asked or directed the plaintiff to assist them in straightening the frame, and that what he did he did voluntarily and of his own accord.

The plaintiff called as witness in his own behalf testified that he was 23 years old and lived on a farm with his parents. He attended a country school until he was 17 years of age and finished the 3rd grade, but did not finish the 4th grade. He was familiar with farm work and when asked what kind of work he could do, his answer was "mostly everything". He did plowing and other farm work. He drove a truck and tractors and stated that he knew how to make a tractor work. He knew how to operate machinery and did general farm work. He owned and drove his own car, and had taken and passed a written exami-

nation in order to obtain his drivers license. He had worked for the defendant, Wax, off and on for several years before the accident which happened on September 16, 1954. On the day of the accident and the day before the accident, he drove a truck belonging to the defendant Arnold Kuhn hauling silage from the corn field to the farm yard where he unloaded the silage on the silage stack. Between 3:30 and 4:00 P.M. on September 16, 1954 the day of the accident he drove with the defendant Baar to the farm yard of the defendant Wax in Baar's truck, and when they arrived at the stack they discovered that one of the trucks had been damaged, that is the left rear frame had been bent because the load had shifted to one side and the weight of the load had caused the frame to bend. The defendants Baar and Wax drove the damaged truck to the machine shed of the defendant Kuhn and were using an hydraulic jack and chain with which to straighten the bent frame. Plaintiff watched them work for some time and he noticed that they got the jack and the chain attached to the frame in such a way that by pumping the handle of the jack they brought tension on the bent frame. While Wax was working with the jack the plaintiff stepped up on the frame, took hold of the handle of the jack and began pumping and he stated that the tension of the jack and chain was strong. The frame seemed to be straightening out when all of a sudden the chain broke and hit him on the left side of the face and injured his eye. His testimony as to how he was injured was practically the same as that given by the defendant Wax. He claimed however that the defendant Baar was using a heavy hammer to pound the frame but this is denied by the defendants Baar and Wax. Their testimony was that they used only a light hammer to drive a piece of steel about the thickness of the leaf of a spring between the frame and an angle iron near the frame. As pointed out the plaintiff had been watching Wax and Baar working with the jack and chain for some time, and he then voluntarily stepped up on the frame and began pumping the jack.

On cross examination he testified as follows:

"Q. Do you know where you were standing just before you started working the jack handle? A. I walked up and stepped on the frame.

"Q. But were you standing right where they were standing, or were you on the other side of the truck? A. No, standing right where they were standing.

"Q. And then, in order to work the jack handle better than they had been working it, you got on the truck, didn't you, you got on the truck frame, didn't you? A. Yes.

"Q. You saw the jack, the chain and it was tight, wasn't it? A. Yes.

"Q. And you figured you could help and jack this jack, didn't you? A. Yes.

"Q. And when you were leaning over the jack you had your head right over the end of the jack, the top of the jack, didn't you? A. No, not quite.

"Q. Well, pretty close though, didn't you? A. Could be.

"Q. You had your head over the chain, anyhow, didn't you? A. Yes.

"Q. If it hadn't been over there it wouldn't have got hit, would it? A. No.

"Q. If you had been off to one side you wouldn't have got hit, would you Mr. Dassinger, isn't that right? A. Yes.

"Q. And actually now, isn't it the truth, Mr. Dassinger, that this accident was just as much your fault as theirs, that's true, isn't it? You could have both been more careful?

"Mr. Kellogg: Objected to as calling for a conclusion.

"The Court: Cross examination.

"Q. Isn't that a fact, you could have both been a little more careful? A. Yes.

"Q. Then it wouldn't have happened, isn't that right? A. Yes.

"Q. Isn't it true, be perfectly honest, Mr. Dassinger, this accident wasn't anymore their fault than your own, was it? A. They could have told me.

"Q. But you could have stayed off to one side too, couldn't you, isn't that right? A. Yes.

"Mr. Kellogg: Let him answer one question at a time.

"Mr. Bloedau: I am asking him.

"Q. You could have held your head a little to one side, couldn't you? A. I could have, if I knew the chain would tear.

"Mr. Bloedau: Yes, well—

"Q. At any event, you could have both been a little more careful about it, wasn't that right, just like you said? A. Yes.

"Q. And if you had been a little more careful and they had been a little more careful, it wouldn't have happened, isn't that true? A. Yes.

"Q. Actually, right when this accident happened, you were all three working on this truck and jack and chain, weren't you? A. Yes.

"Q. And it was Mr. Baar's truck, wasn't it? A. Yes.

"Q. And you were trying to get the frame straightened out? A. Yes."

The defendant Wax testified on cross examination that there were four log chains in the machine shed, and that he took his pick and took the one he thought would be the strongest one, but did not examine each individual link in the chain. We quote from his testimony:

"Q. You saw him (the plaintiff) operating the pump? (jack handle) A. Yes.

"Q. You knew he operated it there several seconds? A. Just about three seconds, or four.

"Q. About four seconds, he pumped eight times in four seconds? A. Yes.

"Q. You knew it wasn't easy for him, didn't you? A. No—yes.

"Q. Whatever line of duty it was, you knew what he was doing, didn't you? A. Yes.

"Q. And you knew it was a situation that, frankly, had some danger attached to it? A. Yes.

"Q. But you didn't stop him? A. No.

"Q. You didn't tell him that wasn't any part of his duty, did you? A. No.

"Q. You let him go ahead, didn't you? A. Yes.

"Q. Where was Mr. Baar during this time? A. He was holding on to the jack.

"Q. Did he have his hand on the jack? A. Yes.

"Q. He was standing up and keeping it in place? A. Yes."

The defendant Baar testified as follows on cross examination with reference to what the plaintiff did in connection with operating the jack:

"Q. Who was handling the handle of the jack then? A. I was.

"Q. You were handling the handle of the jack, both the handle of the jack and the jack itself? A. Yes.

"Mr. Kellogg: Yes.

"Q. And then when he took the jack, you didn't protest, did you? A. No.

"Q. You didn't say 'here this is unsafe, you let me continued with this,' did you? A. No.

"Q. And Mr. Wax didn't either, did he? A. No.

"Q. Did you continue to hang on the jack? A. Yes.

"Q. And were you continuing to hold on to it until the chain broke? A. Yes.

"Q. After he took the jack, he continued to pump it, isn't that right? A. Yes.

"Q. And that is a hydraulic jack, isn't it? A. Yes."

The plaintiff appealed from the order granting a new trial. He contends that it was the duty of the defendants Wax and Baar to examine the individual links of the chain used in straightening the truck frame; that they knew that the chain would be subjected to great tension; that if they had made an examination of the individual links they would have discovered that many links were considerably below their original size and strength. Lew Reiter, a blacksmith and welder testified that he had examined the chain used in the straightening operation, plaintiff's exhibit 3, and that he found several links that had been worn and stretched to such an extent that they were considerably below their original strength. Plaintiff contends therefore that if the defendants Wax and Baar had made proper examination of the chain they would have discovered the defective links, and that in failing to make such examination they were guilty of negligence which proximately resulted in plaintiff's injury.

■ Baar was the owner of the damaged truck. The evidence shows that Wax had had some experience in straightening truck frames. Wax and Baar procured the log chain and the hydraulic jack. They put the chain over the frame of the truck and placed the hydraulic jack in position so that by pumping it tension would be applied to the bent frame. The method used in the straightening operation was planned by Wax and Baar. The plaintiff had been "watching" when Wax and Baar were placing the chain and jack in proper position for the straightening job, but did not participate in the selection of the equipment used. He saw Wax and Baar pumping the jack, and he was justified in assuming that they had taken proper precaution to construct a reasonably safe contrivance, and accordingly he assisted in the operation of pumping while Baar held the jack in position. Neither Wax nor Baar objected to plaintiff's participation in the work at hand. Furthermore, on cross examination the defendant Wax admitted that plaintiff's position when pumping the jack "had some danger attached to it", but he did not warn him or tell him to stop. Under the facts and circumstances the question whether plaintiff was guilty of contributory negligence was a question for determination by the jury.

■ It is admitted that the defendants Wax and Baar made no examination of the links in the chain used in the straightening operation, Wax, who had had experience in straightening frames, was charged with knowledge that great tension would be applied to the chain in the straightening operation, but he had not taken precaution to examine its links in order to ascertain the tensile strength of the chain. Considering all of the facts and circumstances we think the question as to whether the defendants Wax and Baar were negligent in not warning plaintiff of the danger of his position and in not examining the chain as to its strength and suitability for the intended use were questions of fact properly submitted to the jury.

■ The defendants appealed from the order denying their motion for judgment

notwithstanding the verdict and from the judgment. They contend that the evidence is wholly insufficient to support the verdict and that the plaintiff was guilty of contributory negligence which proximately caused his injury and that the plaintiff voluntarily assumed the risk of his employment. Defendants further contend that the trial court erred in refusing to give the following requested instructions:

"You are instructed a master is not bound to warn and instruct his servants as to dangers which are patent and obvious, the danger being generally considered as within the rule where it is open and obvious to the senses of any man of ordinary intelligence or where it is as easily discernable by the employee as by the master or where it is discoverable in the exercise of that reasonable care which persons of ordinary intelligence may be expected to take for their own safety.

"You are instructed that where an appliance or tool is reasonably safe and suitable for the purpose for which it was intended, an employee cannot hold his employer liable for personal injuries resulting from its inappropriate, unauthorized, improper or unusual use or test.

"You are instructed that an employer is not bound to know or to anticipate that his tools and instrumentalities will be used in any other manner than that for which they are usually employed and furnished and if you find that the facilities furnished were suitable for the kind of work for which they are ordinarily intended, but that they were used in a manner which could not have been *forseen* by the Defendant, Arnold Kuhn, then you must find the Defendant, Arnold Kuhn, free from negligence."

We have given due consideration to the trial court's instructions and when considered as a whole under the evidence they sufficiently cover the matters of assumption of risk, and other issues referred to in the requested instructions.

The defendants further contend that the trial court erred in giving the following instructions to the jury:

(a) "But I charge you that the plaintiff herein, by his contract of employment with the defendant, did not assume the risk arising from defective instruments with which he had to work.

(b) "With respect to the question of the standard of care which should be exercised by the parties as it relates to the questions of negligence, contributory negligence, and assumption of risk on which I have instructed you, I instruct you further that you should take into consideration the age, experience and mental capacity of the parties, together with all other circumstances. A party of subnormal mental capacity, like a child, is not subject to such a high standard of care as a normal person and others dealing with him, if they were aware of such conditions, are subject to a higher standard of care. (Page 10a line 23 through line 1, page 10b of plaintiff's brief).

(c) "You are instructed that if you find that one of the defendants was an employee of the other defendant, then his employer is liable for any acts of negligence committed by the employee while acting in the scope of his employment.

(d) "In arriving at the amount of such damages you may take into consideration the reasonable value of any hospital and doctor expenses reasonably and necessarily incurred and paid, arising out of and resulting from his said injuries."

With reference to instruction (a) we are satisfied that under the evidence in the case the instruction was proper. The plaintiff was justified in assuming that the

equipment selected and used by the defendants Wax and Baar was reasonably safe and that therefore he did not assume any risk arising from defects not apparent to him.

■ With reference to instruction (b) the evidence shows that although plaintiff attended school every year from the age of seven years and until he was seventeen, he only got through the third grade, and there was evidence in the record that he was mentally dull. In 38 Am.Jur. Negligence, Sec. 201, it is stated:

"The conduct of all persons, for the purpose of determining contributory negligence, is measured according to the standard of the conduct of the ordinarily prudent man under the circumstances. The fact of the lack of full capabilities is one of the circumstances which must be considered. ·Ordinarily such circumstances apply in favor of the plaintiff.

\* \* \* \* \* \*

"Of course, in determining the liability of the defendant for negligence, the original question presented is whether he was negligent toward the plaintiff. As hereinbefore stated, greater consideration and care are due persons known to be unable to take care of themselves than to those who are fully able to do so. It will be observed however, that the incapacity of the person to whom the duty of care is owing affects the degree of care to be taken for his protection only so far as his incapacity is known to the person charged with the duty."

The plaintiff had been in the employ of Wax at various times for several years prior to the accident involved, and he was therefore aware of any mental shortcomings which he may have observed on the part of the plaintiff.

We conclude that under the evidence that instruction (b) was a proper instruction.

■ Instruction (c) is the statement of a general rule pertaining to the relationship between master and servant and was properly given under the evidence in the case.

■ With reference to instruction (d) if it should be found that plaintiff's injury was the result of the negligence of the defendants, any hospital expenses necessarily incurred by the plaintiff would be items properly included in the damages recoverable by the plaintiff, and the court properly charged the jury thereon.

At the opening of the trial in the district court, and before selection of the jury, the defendants jointly filed a written objection to the panel of petit jurors drawn for the term upon the following grounds; that contrary to Section 27–0914, NDRC 1943, at the drawing of the jury on October 26, 1955, the sheriff was absent and the deputy sheriff participated in the drawing of the jury.

That contrary to Section 29–1719, NDRC 1943, the name of one Frances Malarich was drawn and there was an intentional omission on the part of the sheriff to summon said Frances Malarich.

That said panel did not constitute a legal panel within the the meaning of the statutes quoted.

The trial court overruled the objection and proceeded with the trial.

It is not necessary for us to determine the merits of the objection thus raised, since under the view we have taken herein a new trial must be granted, and it is unlikely that such a situation will then arise.

■ The trial court instructed the jury that one of the issues necessary for them to determine in the case was whether or not the three defendants or any two of them were engaged in a joint enterprise. The jury returned a verdict in favor of the plaintiff and against the defendants jointly on all of the issues. This instruction was

assigned as error by the defendants on the ground that the evidence was wholly insufficient to establish a joint venture by the defendants. The trial court, granted the alternative motion of the defendants for a new trial upon the ground of the insufficiency of the evidence to establish a joint venture. We quote the following language from the memorandum opinion:

"The motion for Judgment Notwithstanding Verdict is denied, but a New Trial is granted on the ground of insufficiency of the evidence to prove the question of a joint adventure. The court being of the opinion that the plaintiff is entitled to a recovery and that the errors complained of may be cured upon a new trial."

The question thus presented is whether upon the record and the evidence the trial court abused its discretion in granting defendant's motion for a new trial.

The plaintiff argues that the trial court erred in granting the motion of defendants for a new trial, and that if in fact a joint venture was not established by the evidence, nevertheless the proof did establish the relation of master and servant between the defendant Kuhn as master and the defendants Wax and Baar as servants rendering all of said defendants liable for the verdict returned and sustaining the verdict as to such defendants; that if in fact a joint venture was not established by the evidence, nevertheless the proof did establish the relation of master and servant between defendant Kuhn as master and defendant Wax as servant rendering both of said defendants liable for the verdict returned in said action and sustaining the verdict as to such defendants; and if in fact a joint enterprise was not established by the evidence, nevertheless the proof did establish the relation of master and servant between Kuhn as master and Baar as servant, rendering both of said defendants liable for the verdict returned in said action and sustaining the verdict as to such defendants.

If either of plaintiff's contentions are correct, nevertheless a new trial would be necessary to resolve the issues thus raised since the verdict returned by the jury found the defendants jointly liable and was undoubtedly founded on the theory that the defendants were engaged in a joint venture.

The rule is well settled in this jurisdiction that a district court may grant a motion for a new trial when in its discretion it finds that the evidence does not justify the verdict. Ross v. Robertson, 12 N.D. 27, 94 N.W. 765; Haslam v. Babcock, 71 N.D. 363, 1 N.W.2d 335.

It is also well settled that when the trial court has granted a new trial the supreme court will not disturb such decision if the evidence shows that the trial court exercised legal discretion in granting a new trial. Baird v. Clooten, 60 N.D. 699, 236 N.W. 356; Crossen v. Rognlie, N.D., 68 N.W.2d 110.

In the case of Durick v. Winters, 70 N.D. 592, 296 N.W. 744, 746, this court said:

"As we show in Gull River Lumber Co. v. Osborne McMillan Elevator Co., 6 N.D. 276, 69 N.W. 691, an order granting a new trial stands on a firmer foundation in the appellate court than an order denying it, for, as stated in Kohlman v. Hyland, 56 N.D. 772, 777, 219 N.W. 228, 230, the reason is that such an order is not decisive of the case, but merely opens the way for reinvestigation of the entire issue on the merits. As a matter of fact, it is the duty of the trial court to set aside a verdict when it appears to him, upon the exercise of sound legal discretion, that the verdict is against the weight of the evidence. State v. Stepp, 48 N.D. 566, 571, 185 N.W. 812, 814."

To the same effect is Martin v. Parkins, 55 N.D. 339, 213 N.W. 574, 576. We quote from the opinion:

"Whether or not a new trial shall be granted rests largely in the sound discretion of the trial court. The action

of the trial court in this regard will not be disturbed on appeal unless there is an abuse of discretion, and where a new trial is granted on the grounds that the evidence is insufficient to sustain the verdict or judgment, the reviewing court will consider and weigh the evidence only so far as may be necessary to determine the question whether the trial court acted within its discretion."

Upon the record before us we conclude that the trial court was correct in denying defendants' motion for judgment notwithstanding the verdict and that granting a new trial was a proper exercise of its discretion.

The order granting a new trial is affirmed.

GRIMSON, C. J., and JOHNSON, BURKE and MORRIS, JJ., concur.